UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jet Edge, a division of ,
TC American Monorail, Inc.,

Plaintiff,

vs.

Edward A. Hagen, Individually,
and doing business as International
Waterjet Parts & Services, and International
Waterjet Parts,

Defendants.

Civil No. 01-2206 JRT/FLN

**REPORT AND RECOMMENDATION**

---

Thomas Harlan, Esq., for Plaintiff.
James Lockhart, Esq., for Defendants.

---

## I. INTRODUCTION

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on March 14, 2002, on: (1) Plaintiff Jet Edge's ("Jet Edge") Motion to Remand [#4]; and (2) Defendants Hagen et al.'s ("Defendants") Motion to Dismiss Jet Edge's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2), (3) or alternatively Transfer of Venue to the Eastern District of Washington [#5]. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons which follow, this Court will recommend that Plaintiff's motion be denied and Defendants' motion be granted in part and the case be transferred to the Eastern District of Washington pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. FACTUAL BACKGROUND

This action arises out of Jet Edge's allegations that Defendant Edward Hagen ("Defendant Hagen") breached his Confidential and Noncompete Agreement and is not only competing with Plaintiff, but is also disclosing confidential information to Defendants International Waterjet Parts, Inc., ("IWP") and International Waterjet Parts & Services, Inc., ("IWPS"), and using said information in the development of products for the corporate Defendants. In considering these motions, the facts are recounted (as they must be) from a fair reading of non-moving party's version of the evidence. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ring v. First Interstate Mortg., Inc., 984 F.2d 924 (8th Cir. 1993); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992); U.S. v. Aceto Agric. Chem. Corp., 872 F.2d 1373, 1376 (8th Cir. 1989); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986).

Jet Edge is a division of TC American Monorail, Inc., a Minnesota corporation that is engaged in the business of designing, developing, manufacturing and assembling water jet cutting tables and cleaning systems employed in the ultra high pressure water jet industry. In addition, Jet Edge designs, manufactures and sells replacement parts for its own systems and for other manufacturers and performs maintenance and services for the same. Defendants IWP and IWPS are Jet Edge's competitors in the water jet industry. Both entities are Washington State corporations with their principal place of business in Ephrata, Washington. Defendant Hagen was a senior employee at Jet Edge and was responsible for coordinating and making sales to Jet Edge's clients in the United States and Canada, setting up various cutting tables and tools, selling replacement parts and maintenance services, as well as research and design development. Defendant Hagen is and has been a resident of Ephrata, Washington at all times relevant to this litigation and maintains his

business offices in Washington State.

Prior to his employment with Jet Edge, Defendant Hagen was employed by Chukar Industries, Inc., ("Chukar"), another competitor. Chukar, like Jet Edge was engaged in the high pressure water jet industry focusing specifically on the development and manufacturing of what are referred to in the industry as cutting tables.[1] In June 1998, Jet Edge purchased all assets of Chukar relating to the manufacturing and selling of capital equipment for the water jet cutting systems. Management personnel from Jet Edge traveled to Washington State to complete the purchase and as of the agreement, Charles E. Johnston ("Mr. Johnston"), Chukar's sole shareholder, agreed to change Chukar's name and not compete with Jet Edge for a period of five years. Additionally, under the terms of the aforementioned agreement, Mr. Johnston was allowed to continue his investment in his existing business of producing and selling spare parts for the water jet systems.

As part of the Chukar transaction, Jet Edge offered certain Chukar employees, including Defendant Hagen, continued employment if they would sign a Confidential and Noncompete Agreement ("Agreement"). The Agreement also contained a Minnesota choice-of-law provision, but, did not contain a forum selection clause. Defendant Hagen signed the Agreement on October 13, 1998, in Washington State and continued in his position as an operations manager and later a sales representative for Jet Edge in Washington State. Pursuant to the terms of the Agreement,

[1] Cutting tables are large industrial tables upon which the material to be cut or fashioned is placed. The material is cut or fashioned by the delivery of ultra high pressure water or other liquid through cutting heads or nozzles that are guided by a device referred to as a controller. The controller, usually a personal computer, guides the cutting heads and the table to provide a precision cut based upon pre-programmed instructions. The tables also contain recovery systems in which the water or other product delivered can be recycled. The typical Jet Edge cutting table sells for $160,000.00.

Defendant Hagen agreed that he would not, for a period of one year following the termination of his employment with Jet Edge, perform any of the activities he performed for Jet Edge or otherwise compete in the high pressure water jet industry. Jet Edge maintained business offices in Washington State until moving back to Minnesota wherein Defendant Hagen was required to attend meetings in Minnesota at regular intervals, but still maintained his residence and office in Washington.

Subsequently, in October 1998, Mr. Johnston started another company, IWP. Defendant IWP is in the business of selling after-market parts for the water jet systems. At one point in time, IWP had a distributor contract with Jet Edge for after-market parts, which has since expired. Notwithstanding this contract, the primary relationship between IWP and Jet Edge was, until the commencement of this suit, that of a vendor and vendee, with Jet Edge purchasing approximately $35,000 worth of products each year. IWP also sells approximately $50,000 worth of products per year to at least one other company located in Minnesota. These sales amount to less than 1% of IWP's total sales. Defendant IWPS was incorporated in June 2001, and is in the business of providing service contracts for the water jet systems.

Defendant Hagen resigned his position with Jet Edge in May 2001, and was subsequently employed by IWP and IWPS. Following Defendant Hagen's resignation, Jet Edge requested that he return its confidential information. When there was no reply, Jet Edge's counsel wrote a letter to Defendants indicating that Defendant Hagen was not to compete with Jet Edge and any said efforts should cease immediately. Notwithstanding this warning, Jet Edge believes that Defendants are violating the Agreement.

On November 1, 2002, Jet Edge served a Complaint on Defendants alleging breach of contract, misappropriation of trade secrets, breach of fiduciary duty, tortious interference with

contract, unfair competition and tortious interference with prospective economic relations/advantage. Plaintiff pled damages in excess of $50,000 for each claim and venued the action in Hennepin County District Court. On November 30, 2001, Defendants removed the matter to this Court alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On November 30, 2001, Defendants filed the instant Motion to Dismiss or alternatively for Change of Venue. Shortly thereafter, on December 26, 2001, Plaintiff filed its Motion to Remand based upon lack of subject matter jurisdiction.

## IV. DISCUSSION

### A. Plaintiff's Motion to Remand Should be Denied

Federal courts are courts of limited jurisdiction. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). A lack of federal subject-matter jurisdiction cannot be waived. Id.; Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998). An action may be removed to federal court only if the case presents a federal question or the requirements for diversity jurisdiction have been met. See 28 U.S.C. § 1441. The purpose of the removal statute is to restrict and limit removal jurisdiction, therefore the statute is to be construed narrowly and any doubt should be resolved against removal jurisdiction. See American Fire & Cas. Co. v. Finn, 341 U.S. 6 (1951); see also Johansen v. Employee Ben. Claims, Inc., 668 F.Supp. 1294, 1295-96 (D. Minn. 1987) (discussing the rationale for narrowly construing the removal statute and noting defendant's burden of showing the action was properly removed).

Diversity jurisdiction under 28 U.S.C. § 1332 is available in all civil matters where the amount in controversy exceeds $75,000 and is between citizens of different states or citizens of a state and subjects of a foreign state. Where, as here, the parties concede that complete diversity of

citizenship exists between the parties, the Court's analysis focuses upon the requisite amount in controversy threshold of $75,000. See Blair v. Source One Mortg. Servs. Corp., 925 F.Supp. 617, 622 (D.Minn. 1996).

As is true of the other jurisdictional requirements for removal, the amount in controversy is determined on the basis of the record as it existed at the time the defendant sought to remove the action. See Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353 (1961). Generally, the presence of the jurisdictional amount is to be determined by the good faith allegations of the complaint. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, (1938); Ringsby Truck Lines, Inc. v. Beardsley, 331 F.2d 14, 15 (8th Cir. 1964). However, the party asserting federal jurisdiction has the burden of establishing that the amount in controversy requirement is met. See Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir.1969). In determining whether the removing defendant has established by a preponderance of the evidence that the jurisdictional threshold is reached, the court must first determine whether it is facially apparent that the claims are likely above $75,000. See Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995). In this inquiry, "the proper procedure is to look only at the face of the complaint and ask whether the amount in controversy was likely to exceed [$75,000]." Allen, 63 F.3d at 1336.

Jet Edge seeks to remand the case to Hennepin County District Court based upon a lack of subject matter jurisdiction. Specifically, it argues that Defendants have not proved that the amount in controversy is likely to exceed the $75,000 jurisdictional requirement. Defendants oppose the motion on the grounds that they have met their burden of proof because (1) it is facially apparent from Jet Edge's prayer for relief that it seeks relief in excess of $50,000 for each of its seven conjunctively pleaded causes of action, See Lynch v. Porter, 446 F.2d 225 (8th Cir. 1971) (single

plaintiff may properly aggregate all claims which he has against defendants to satisfy jurisdictional amount); (2) if Plaintiff prevails on one claim, it is reasonable to believe that it will prevail on at least one other claim, thereby satisfying the $75,000 jurisdictional amount; (3) Jet Edge's request for equitable relief demonstrates that the amount in controversy exceeds $75,000;[2] and (4) the cost to Defendants to be enjoined from the sales of their service contracts and products for one year would be over $75,000, See Bergstrom v. Burlington Northern R. Co., 895 F.Supp 257 (D. North Dakota 1995) (holding that costs to Defendant may be considered in determining amount in controversy on removal). We agree.

The Court has considered the state court petition, the petition for removal and the Parties' arguments and concludes that Jet Edge's Complaint alleges present damages of at least $75,000 plus future damages. The court does not know how much profit Jet Edge or Defendants earn on each table sale, but given the overall sales figures and Jet Edge's claim that Defendant Hagen has the information necessary to significantly undercut Jet Edge's pricing structure for the indefinite future, it seems likely that sales for the tables will cost Jet Edge in excess of $75,000 in lost profits. This figure does not even take into account any attorneys' fees, which must also be included in the

---

[2] Specifically, Jet Edge seeks an order prohibiting Defendant Hagen from competing with it for one year by precluding him from soliciting any Jet Edge clients and assisting in the development of competing products. During his last year with Jet Edge, Defendant Hagen's sales amounted to over $750,000, consequently Defendant contends that the relief sought clearly exceeds the jurisdictional requirement.

Jet Edge also seeks an order enjoining Defendant IWPS from selling its products for one year. IWPS has sold sales and service contracts in the amount of approximately $74,864.29 in only seven months, consequently, it is reasonable to conclude that the sale of service contracts for one year would likely exceed the jurisdictional amount. Furthermore, if Jet Edge's request for a permanent injunction prohibiting Defendant IWP from selling equipment is successful, this too would exceed the jurisdictional amount in light of the fact that each cutting table is valued at approximately $160,000.

calculation of the amount in controversy. See Peterson v. BASF Corp., 12 F.Supp.2d 964, 968 (D.Minn. 1998). Thus, the court concludes that Defendants have established that the damages claimed exceeded the $75,000 jurisdictional requirement and will recommend that Jet Edge's motion to remand be denied.

**B. Defendants' Motion to Dismiss, or in the Alternative, Transfer to the Eastern District of Washington State**

Defendants argue that this Court lacks personal jurisdiction over them. Alternatively, they move for a transfer to the Eastern District of Washington State because venue is not proper in the District of Minnesota and the convenience of the Parties favors transfer.

As a threshold matter, this Court must decide which issue--venue or jurisdiction--to address first. The Supreme Court has suggested that because personal jurisdiction is not fundamentally preliminary in the same way that subject matter jurisdiction is, a court may consider venue first, before it considers the issue of personal jurisdiction, when there are sound reasons for doing so. See Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979) ("[W]hen there is a sound prudential justification for doing so . . . a court may reverse the normal order of considering personal jurisdiction and venue."); Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962) ("Nothing in [the language of the transfer statute, 28 U.S.C. § 1406(a)] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants.").

**1. Defendants IWP and IWPS' Motion to Transfer Venue Should be Granted**

Pursuant to 28 U.S.C. § 1391(a)

"[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in[:] (1) a judicial district

> where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

Id. A corporate defendant is deemed to "reside" pursuant to subdivision (1) in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); Guidant Sales Corp. v. Niebur, No. 01-1772, 2002 WL 205575 (D.Minn. Feb. 7, 2002); K-Tel Int'l, Inc. v. Tristar Prod., Inc., 169 F.Supp.2d 1033 (D.Minn. 2001). Venue protects a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred. See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1576 (Fed. Cir. 1990), cert. denied, 499 U.S. 922, 111. "Where venue is challenged by a defendant, plaintiff bears the burden of proving that venue is proper in the forum state." Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., et al., 927 F.Supp 731 (S.D.N.Y. 1996).

Here, venue in the District of Minnesota is improper under subsection 1 because none of the defendants reside in Minnesota. Likewise, subsection 3 is not available to assert venue because there is at least one other district--the Eastern District of Washington--in which the action can be brought (pursuant to subsection 1) because all defendants reside there. Consequently, the issue before us is whether a "substantial part of the events . . . giving rise to the claim[s]" occurred in the District of Minnesota, thereby rendering venue proper pursuant to subsection 2. 28 U.S.C. § 1391(a)(2).

The Plaintiff's chosen forum need not have the most substantial contacts to the dispute. See United States Surgical Corp. v. Imagyn Medical Technologies, Inc., et al., 25 F.Supp.2d 40 (D.

Conn. 1998). The fact that substantial activities may have taken place in other districts is not dispositive. See Setco Enterprises Corp. v. Robbins, 19 F.3d 1278, 1281 (D.Minn. 1994) (holding that the Eighth Circuit no longer asks which district among two or more potential forums is the "best" venue.); Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir.1992) (construing § 1391(b)(2)). Rather, it is sufficient that a substantial part of the events occurred in the forum state even if a greater part of the events occurred elsewhere. See Setco Enterprises Corp., 19 F.3d at 1281; United States Surgical Corp., 25 F.Supp.2d at 43. In the case of multiple claims, proper venue must be established with respect to each cause of action asserted. PI, Inc. v. Quality Products, Inc., 907 F.Supp. 752, 757 (S.D.N.Y. 1995).

Venue is improper as to all claims against Defendants IWP and IWPS because none of said claims have a substantial nexus to this district. Jet Edge's reliance on Defendant Hagen's Confidential and Noncompete Agreement, which was signed and executed in Washington, is not persuasive because it is insufficient to establish a nexus between Defendants IWP and IWPS and the District of Minnesota. According to the Complaint, Jet Edge's claims arise out of events that occurred in Washington State. Any alleged tortious interference with contract, misappropriation of trade secrets, violation of the Minnesota Trade Secrets Act and unfair competition which Defendants IWP and IWPS may have committed against Jet Edge would have been committed in Washington State, where said Defendants reside. In fact, it appears that Minnesota's only connection to Defendants IWP and IWPS, in the instant suit, is that it is the state wherein Jet Edge resides and retains the Agreement Defendants IWP and IWPS are alleged to have interfered with. This clearly does not amount to the substantial connection necessary to establish proper venue in Minnesota. In light of the foregoing, this Court concludes that proper venue would lie in the Eastern District of

Washington pursuant to 28 U.S.C. § 1391(a)(1) or (2).

As noted above, proper venue would lie in the Eastern District of Washington and Defendants IWP and IWPS would seemingly be subject to personal jurisdiction in that district. Therefore, rather than dismissing Jet Edge's claims against Defendants IWPS and IWP pursuant to Fed. R. Civ. P. 12(b)(3), in the interest of justice, we will recommend that these claims be transferred to the Eastern District of Washington pursuant to 28 U.S.C. § 1406(a) ("The district court . . . [in which a case is filed] laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division where it could have been brought."). See Medtronic v. Camp, Civ. No 02-285 (D.Minn., April 1, 2002); Saferstein, 927 F.Supp at 736 (noting that once a proper objection to venue is made, 28 U.S.C. § 1406(a) allows the district judge to dismiss, or if it be in the interest of justice, transfer such case to proper a venue and where the motion asks only that the suit be dismissed, the court may properly, *sua sponte*, order it transferred).

### 2. Defendant Hagen's Motion to Transfer Venue Should be Granted

As noted earlier, venue is proper in any district in which "a substantial part of the events occurred . . . , even if a greater part of the events occurred elsewhere." See K-Tel Int'l, Inc., v. Tristar Prod., Inc., 169 F.Supp.2d 1033 (D.Minn. 2001). Thus, this Court must simply consider whether the forum selected has a significant connection to Jet Edge's claims against Defendant Hagen. See Setco Enterprises, 19 F.3d at 1281.

The *sine qua non* of Jet Edge's Complaint against Defendant Hagen is his alleged breach of the Confidential and Noncompete Agreement.[3] As noted earlier, this contract was negotiated,

[3] Specifically, the Complaint also alleges claims of misappropriation of trade secrets, violations of the Minnesota Trade Secrets Act, unfair competition and breach of fiduciary duty

executed performed, and was allegedly breached, in Washington. Nonetheless, in connection with this contract, Defendant Hagen returned to Minnesota at very regular intervals to attend meetings, make sales and fulfil his duties as an employee. Although a greater number of events took place in Washington, Defendant Hagen's regular visits to Minnesota to fulfil his duties as an employee, create a sufficiently significant connection to the state to render venue proper in this district. See Saferstein, 927 F.Supp. at 736.

As noted above, with respect to Jet Edge's claims against Defendant Hagen, venue is proper in this District. Nonetheless, Defendant Hagen contends that pursuant to 28 U.S.C. § 1404(a), this Court should transfer the case to the United States District Court for the Eastern District of Washington. Similar to the common law doctrine of *forum non conveniens*, 28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Generally, transfer under 28 U.S.C. § 1404(a) "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir.1982). Defendant Hagen bears the burden of proof to show that the balance of factors "strongly" favors the movant. Graff v. Qwest Communications Corp., 33 F.Supp.2d 1117, 1121 (D.Minn. 1999). To determine whether a transfer is appropriate, the court should consider the convenience of the parties and witnesses and the interests of justice. See Lyon Financial Services, Inc. v. Powernet, Inc., No. 01-1089 JRT/FLN, 2001 WL 1640099 (D.Minn. Nov. 19, 2001). In considering these factors, the court must look to the particular circumstances of the case before it. See Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir.

---

against Defendant Hagen.

1997).

Upon consideration of the aforementioned factors, we conclude that while Minnesota is the proper forum for Jet Edge's claims against Defendant Hagen, the Eastern District of Washington is the more convenient forum. First, the Agreement giving rise to the claims was negotiated and executed in Washington and Defendant Hagen resides in and works out of his office in Washington. Second, virtually all the events giving rise to the claims against Defendant Hagen occurred in Washington and as such, many of the witnesses that will testify to the facts and circumstances surrounding said claims likely reside in Washington. Third, most of the sources of proof relating to events that occurred in Washington are likely located there. Fourth, if Defendant Hagen were forced to litigate this case in Minnesota, he would suffer possibly extreme inconvenience due to travel expenses and time off from work. Fifth, Jet Egde's choice of forum is entitled to little deference because the events giving rise to these claims did not occur in Minnesota. See United States Surgical Corp., 25 F.Supp.2d at 46-47.

The interest of justice and considerations of judicial economy also weigh in favor of a transfer. First, by transferring these claims to the Eastern District of Washington along with Jet Edge's claims against Defendants IWP and IWPS, it is more likely that all issues arising from the same core set of events may be resolved in one judicial forum. Furthermore, this Court is confident that United States District Court of the Eastern District of Washington is well equipped to properly apply Minnesota law to the claims against Defendant Hagen. Finally, Jet Edge, is better able to absorb the litigation costs associated with the suit in Washington, than Defendant Hagen, who absent transfer will be forced to litigate this case in Minnesota.

In light of the foregoing, this Court will recommend that, in the interest of justice, Jet Edge's

claims against Defendant Hagen be transferred to the Eastern District of Washington, where said claims could have been brought. See 28 U.S.C. § 1404(a). Furthermore, this Court has the power to transfer this suit to a district (or another district) where it might have been brought even though it does not have personal jurisdiction over defendants. See Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962).

## IV. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion to Remand [#4] be **DENIED**;

2. Defendants' Motion to Dismiss Jet Edge's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and (3) or alternatively Transfer of Venue to the Eastern District of Washington [#5] be **GRANTED in part** and **DENIED in part** as follows:

   a. Insofar as the Motion seeks to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (3), it is **DENIED**;

   b. Insofar as the Motion seeks to Transfer Venue to the Eastern District of Washington it is **GRANTED** pursuant to 28 U.S.C. §§ 1402(a) and 1406(a).

DATED: June 27, 2002

Franklin L. Noel
FRANKLIN L. NOEL
UNITED STATES MAGISTRATE JUDGE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection in made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within 10

days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.